Smith v. Michael Bokor 22-11951 Ms. Perry, I see that you have reserved three minutes for rebuttal, so when you are ready, you may proceed. Your Honor, if it may please the Court, I am Mary Perry and I represent the The estate of Shirley Cox v. Betty Smith, John Ballew v. Judith Ballew is attorney-in-fact. The estate of Roger Lapp v. Mark Lapp, personal representative. This case arises, they had a relatively complicated history. It was removed to federal court. It was remanded back to state court. Mr. Bokor appealed that remand in this circuit, sent it to federal court. I guess after a number of years, the original was filed in, I believe, 2018. The court finally had a report and recommendation of the magistrate judge recommending that the . . . Counsel, we're pretty familiar with the procedural history. I know we've all read the order, certainly. You don't need to summarize that for us. My first question is this. Can you show me where in your initial brief that you appealed the determination by the magistrate judge adopted by the district judge regarding the primary jurisdiction doctrine and regarding Colorado River abstention? I cannot show that in the original brief. It was addressed, I believe, in a subsequent answer brief. Given our preservation rules and the rules with how we treat issues that weren't raised and where they were a reason for dismissal below, how do we deal with that as an appellate panel? Well, I believe, Your Honor, that . . . Let me tell you the reason I'm asking. As I understand it, the district court took a very belt and suspenders approach to dismissing this. It dismissed it on standing grounds. It dismissed it for some merits issues, and then it also dismissed, as I understand it, based on the primary jurisdiction doctrine and Colorado River abstention. And so, as I understand our law, where there's multiple bases and where one party has not, in their initial brief, appealed one of those bases, then we're sort of required to affirm at that point, are we not? How do I get around that? Well, Your Honor, if it's an abstention doctrine, it might be most appropriate to send it back to state court because that would be the idea behind the Colorado River extension that that would be more of a province of the state court. We don't really transfer cases to state court. In other words, that's not really the way it works. What we do is we sort of stay our hand by saying we dismiss without prejudice and you all can go down there and litigate this thing. And that seems to be what those doctrines are based on. Now, I'm not talking about the merits of whether the district court got it right regarding those doctrines, but I'm flummoxed by what we are to do as an appellate panel where a party doesn't challenge one bases of three that the district court gave for its dismissal decision. Well, I believe that they were more focused on some of the more substantive things that the district court ruled and . . . I do agree with that. Your Honor. I agree with you. That does seem to be the tenor of the brief is we're worried about the merits side of it and you do a good job on that and we'll talk about some of that stuff. But I need to sort of deal with this threshold issue of what do I do where there's these other reasons the district court gave for dismissal that don't seem to be addressed, at least in the initial brief. Well, not really overtly in the initial brief, but I think it's kind of subsumed. There were just a number of items that the magistrate judge made recommendations on, basically making recommendations that basically everything that had been raised as grounds of dismissal be dismissed and there were things that were done to dismiss. I think the focus was more on the fact we were really concerned about the standing issue and the court had made a ruling that basically there did not appear to be standing which we strongly had objected to based on a line of cases that dealt with the silver star. There is a Health Care Clinic Act in Florida and if a health care clinic is defined and a nursing home is not necessarily defined as that, but we thought that was a very analogous situation because what we had had in this case was a gentleman who had misrepresented the fact that there were no management companies to these group of nursing homes during the application process. Chapter 408 of the Florida statutes, it deals with the importance of the licensure process for nursing homes and it would imply by implication, it wouldn't really make sense if someone doesn't follow that statute that they be allowed to, that nursing home group be allowed to continue, take our client's funds, take potential Medicare and Medicaid funding when they're essentially operating based on a license that was obtained on inaccurate or fraudulent information. So with regard to standing, I probably agree with you, but maybe not for the reasons that you're articulating here, but on the merits, your theory is based on what you just said, which is there's a lie made in the application, that has implications, the implications are that essentially the whole thing is void and any payments are unenforceable and returnable, refundable, right? That's the theory. Yes, Your Honor, that's the theory. Okay, let me probe that for a second. And I agree with you, you're right when you're saying that that theory depends on the analogous Florida PIP statute and Florida Health Care Act statutes. The problem, it seems to me, is that under the nursing home statute, so the 400 series, 400 to 408, there is a specific remedy that the legislature has articulated for the very thing that you are challenging, which is a false misrepresentation made in the nursing home application. And there, what the remedy seems to be is revocation or something else. Now, that's very different than the health care fraud statute, the health care act statute, and the PIP statute, which make payments unenforceable where there's been a misrepresentation. How do we deal with that difference in statute where the legislature has seemed to make an explicit decision about how this very thing is to be remedied? Well, I'm not certain when the legislature made that that they could have contemplated some of the misrepresentations that were made in the license process. And I think that the better reasoned approach would be to not reward nursing home facilities where there have been these misrepresentations made to obtain licenses because... Counsel, that certainly may be the better policy. I mean, but I don't know that you can say that the Florida legislature is sort of uninvolved in the nursing home process. It seems every term that there's a tinkering. As you know, you're involved in this. There's a tinkering with the nursing home statutes. So it isn't as if the legislature is uninvolved in this area. They are very involved in it. And it seems to me that that is a conscious decision that they made, especially when in the series next door, which is the health care statute, they chose a different way and a different remedy for a very similar wrong. Well, they appeared to treat it differently. However, there would be funds, federal funds, personal funds from individuals, and they don't seem to address that. But we do have a statute, 400.023. It's a nursing home residents' rights statute, and it talks about the nursing home residents having a right to have fair and accurate accountings in their funds. And I think this would be analogous to that. The majority of the court reform that has been enacted. As I understand it, though, counsel, there's no allegation, and correct me if I'm wrong, I've read the complaint, but there's no allegation that any of the residents involved here, the three plaintiffs involved here, were denied care in any way, were given where their money was taken and care wasn't provided. In other words, the only allegation of misappropriation is that the nursing home had lied on the application and that should void the payments, right? Well, that was the argument that was made. But a little bit of background, because of the lying on the application, some of the individuals involved, including Mr. Boker, who had a history of being involved in management of nursing homes, many of which there were some key TAM actions that had been filed. There were lawsuits that had been filed in other states, Pennsylvania, Texas, cases like that. And I just think that they were skating in, trying to go in between the curvature of the statutes. The residents were, yes, indeed harmed. It was a financial harm, and I think we set forth in the brief that the financial harm would have been that they would have had liens placed for amounts that Medicare and Medicaid had paid. The estates would have liens on them, potentially, and there would be monies owed to an entity that very well may not have been licensed had the truth been told at inception. And I understand that the Agency for Healthcare Administration has all kinds of regulatory responsibilities, but there are so many nursing homes in the state. There are thousands and thousands of nursing home residents. And in all fairness to ACCA, they are not necessarily able to provide the, I guess, the policing functions. Right, but you're allowed to go to ACCA. Anybody can go and say, hey, this place is unlicensed or should not be licensed because they made a false statement. You could start that action in ACCA tomorrow if you wanted to. Could you not? I believe we could. It would be more of a regulatory. It would be. This was so widespread, though. There were between 22 and 25 nursing homes. Our residents came from two of the nursing homes, but we contend it had the same ownership structure. And by cutting out the residents and the ability for a lot of them to join together in trying to get a class action out of this, they might be able to do something that they would not be able to do because it's more of a financial type instead of a personal injury type situation. They wouldn't be able to recover damages. You'd have a problem with damages. Well. If you had an administrative procedure. Yes, yes. There would be problems. That's why you filed suit in state court in the first place. Well, it was. It got removed. I know that. I mean, you were seeking damages. Yes. We would seek damages. It would be the economic type for amounts that were paid by the residents and their families or on behalf of them that they would be responsible for ultimately with liens and things against their estates. I think they have standing there, and I would think. Okay, and you have exceeded your time, but you still have three minutes for a rebuttal. Thank you. Thank you. Ms. Evans. Good morning, Your Honors, and may it please the court. Appellant's theory in this case is that alleged omissions made on the licensing applications for skilled nursing facilities render those licenses void, and therefore any amounts paid for services provided by those facilities should be canceled, even if those monies were paid by third-party payors such as Medicaid and Medicare. It's appellant's contention that those funds should be raked over to appellants and the putative class in this case. Appellants tie this theory to two claims asserted in the amended complaint. The first is for aiding and abetting a breach of fiduciary duty, and the second is for violation of the Federal Racketeer and Influence Corrupt Organizations Act. But neither claim is plausible, and therefore this court should affirm the decision of the district court dismissing the amended complaint. But you're not urging us to get to the merits. You have raised the issue of waiver that Judge Luck has discussed, correct? That's correct, Your Honor. We have asserted in our brief that the appellants have waived a number of the grounds on which this court could affirm the district court. But even if the court were so inclined to consider the merits, the merits also dictate that this court should affirm the district court's decision dismissing the amended complaint. But the waiver issue could knock this case out without reaching the merits, correct? That's correct, Your Honor. And plaintiff's claims are not plausible in this case for two main reasons. First, with respect to the claim for aiding and abetting a breach of fiduciary duty, the appellants have failed to allege an underlying fiduciary duty that was owed to the nursing home residents. And second, with respect to the RICO claim, appellants have failed to allege a pattern of racketeering activity and have also failed to adequately allege causation. And there's yet a third reason that this court has discussed with counsel for appellants this morning related to the standing of appellants in this case to bring the claims that they seek. I don't know. I know you guys frame it as a standing question. I frankly don't see it that way, and I'll just tell you why. When it comes to standing at the allegation stage, we don't get into the merits. You want us to decide the merits of the issue, but the question is simply, did they allege an injury, not are they going to win on an injury? And they seem to have alleged a financial injury. Now, at the end of the day, are they right about what they have alleged? I don't think they are, but that's a merits issue, not a standing issue. And so it doesn't matter for our purposes, because I think there's all sorts of problems before we get there. But I think the framing of this as standing is more confusing than clarifying. But let me break down what you've just gone through there. So with regard to fiduciary duties, what do you do with Greenfield, the fourth DCA case, which seems to suggest that a licensee does owe fiduciary duties to a nursing home resident? Your Honor, first of all, the Greenfield case is over two decades old and was decided before some changes to Chapter 400 that made it the exclusive remedy for violations of nursing home rights. How does that change the designation, though, of fiduciary duties? Even if it's not, I agree with you that the remedy has to be filtered through the Chapter 400. But how does that abrogate or overrule or say that the determination that these are fiduciary duties are wrong or not there? Well, Your Honor, it's related to the second point, which is that in the Greenfield case, the parties didn't challenge directly whether a fiduciary duty could exist in that case. The argument that was raised was whether or not the existence of a contract prevented the application of a fiduciary duty. So the court never actually reached the question of whether a fiduciary duty should apply. The additional problem in that case is that the allegations with respect to the existence of a fiduciary duty were different than the allegations here. And let me clarify what I mean by that. In this case, appellants are traveling under the theory that a fiduciary duty existed by operation of law, by mere admittance of these residents into the skilled nursing facilities that a fiduciary duty would apply. I'm not sure that's 100% right. I've read the allegations. They seem to suggest that there's a special relationship that exists between a resident and the licensee, the operator. Your Honor, you're correct. It does say that in the amended complaint, but that's a conclusory allegation. Under Florida law, for a fiduciary duty to exist, it can't simply be that a party placed their trust in another. There has to be a reciprocal acceptance of that trust. A fiduciary duty is the highest duty imposed under Florida law, and it's not imposed lightly. Right, but it's a legal issue, not a factual one. In other words, I'm not sure how you plead a fiduciary duty, other than, I guess, the acceptance of some sort of special burden. But fiduciary duties are duties that exist as a matter of law because of the nature of the relationship. And if the Fourth DCA has said that the nature of the relationship between a resident and a nursing home company is a fiduciary relationship, then that seems to be a legal determination that we must give eerie deference to, no? So, Your Honor, you're correct that fiduciary duties can exist by operation of law, and there are some circumstances where they are implied that way. Attorney-client, accountant-client, you know, any number of those sorts of relationships. Correct, Your Honor. You know, trustee-beneficiary. But the problem here is that the Greenfield case does not hold that a fiduciary duty is implied by operation of law in this circumstance between a nursing home resident and a skilled nursing facility. So there is no support for the idea that such a duty should be imposed by operation of law. There is also under Florida common law that plaintiff can make a requisite showing through allegations in the complaint that a fiduciary duty existed because the nursing home accepted it. And again, those allegations in the complaint are highly conclusory. But I think there's even another reason why the court could find that a fiduciary duty is not implied as a matter of law in this case because it simply needs to look at Chapter 400. As Judge Luck mentioned earlier, Chapter 400 is a very detailed scheme that governs the regulations of skilled nursing facilities in Florida. And in Section 400.022, the Florida legislature lays out in great detail the duties that a nursing home, or excuse me, a skilled nursing facility owes to its residents. And a fiduciary duty is not contained in that list of very specific enumerated duties. And the Florida legislature knows how to impose a fiduciary duty by matter of law when it wants to. And it didn't do that here. And so that should advise this court that the Florida legislature did not intend for a fiduciary duty to apply in these cases as a matter of law. But even if the court were to find that in some circumstances, a skilled nursing facility could owe a nursing home resident a fiduciary duty, as was recognized by the magistrate judge, the plaintiffs also failed to adequately plead that there was any substantial assistance by Mr. Boker in the breach of any fiduciary duty. And so for that additional reason, the claim still fails on the merits. And that takes me to the RICO claim. And the RICO claim fails for two reasons. The first one being that the plaintiffs, sorry, the appellants have failed to allege a pattern of racketeering activity. And the second is that they have also failed to allege sufficient facts to show causation. With respect to a pattern of racketeering activity, there are two types of claims that appellants raise to support their RICO claim. The first are brought under section 1035. And the second two are brought under the mail and wire fraud statutes, section 1341 and 1343. With respect to the claims that are alleged under section 1035, those are not in the list of RICO predicate acts enumerated under section 19 section, sorry, 1961 subsection 1. So for that reason, those claims cannot support their claim for a RICO violation. What about the amended complaint? Because they tried to remedy some of that in the amended complaint, it seems to me. Your Honor, I'm not sure I understand your question because I'm discussing the amended complaint. Are you asking about the proposed second amended complaint? That's what I'm talking about, right? Yes. So in the proposed second amended complaint, all they did with respect to the allegations of mail and wire fraud was to add in some dates when Mr. Boker allegedly sent some licensing applications to the... So what we've said under, you're making a Rule 9 argument that there needs to be particularity with regard to the fraud allegations for the RICO claim. We do make that argument. Right, that's the pattern and practice problem. And so what they've tried to do is to give you the who, what, where, why. And it seems to me in paragraph 165 of the proposed complaint, it does that in that paragraph, at least with regard to the three instances where Mr. Boker sent to a specific place at a specific time a description of the misrepresentation. I respectfully disagree, Your Honor. It does lay out the time and place and what Mr. Boker did, but they also have to allege that the content and the manner in which these statements misled the plaintiff, the appellants in this case. These mail and wire, alleged mail and wire fraud was not made to the appellants. It was allegedly made to ACCA. I know, but they allege that, and that is that the representation was these were properly licensed and they weren't. I understand it rests on the predicate of this whole thing is void to begin with, but it's clear that they allege what the misrepresentation was to the plaintiffs, and they've alleged what the predicate acts were for the conspiracy. I don't know why the district court, the R&R said that it was still futile, and I'm not sure that I read the amended complaint to be futile, that it didn't fix some of the problems that were identified by the magistrate judge in the district court. Well, Your Honor, even if the proposed second amended complaint, which the court was not considering on its motion to dismiss could fix some of the issues with the particularity requirements, it still would fail on the causation issue for RICO. They bring their claims under RICO under two subsections of RICO, both subsection B and subsection C, and so subsection B is the portion of the RICO statute that deals with the acquisition or maintenance in a RICO enterprise, and that's distinct from an injury from the predicate act themselves, and for a subsection C violation, the plaintiff must plead facts sufficient to give rise to a reasonable inference that the claimed racketeering activity was the but-for and proximate cause of plaintiff's injuries. With respect to subsection B, the amended complaint contains no allegations that the appellant suffered any injuries as a result of Mr. Boker's alleged acquisition or maintenance of a RICO enterprise, and with respect to subsection C, appellants had to allege that the purported instances of mail or wire fraud, which are the only allegations that get them over the line, approximately caused them harm, but the allegations there, which are in paragraph 167, I believe it's G and F or F and G of the amended complaint, they are alleging mail and wire fraud related to claims submitted to Medicaid and Medicare, and I think this court would agree that the plaintiffs don't have standing in this case to recover for alleged false claims made to Medicaid or Medicare. And so for that reason, even if the court were to find that the appellants could make an amendment to the complaint that would not be futile with respect to resolving the particularity requirements, which is Mr. Boker's position that even those amendments don't get them there, their claim still fails on the issue of causation. And to just briefly address the standing issue, I know, Judge Luck, that you had some concerns about the application of that here, so I won't go too in-depth since that's covered in our brief, but I would like to address the standing issue as it does relate to Medicaid and Medicare and to the extent that the appellants are seeking to recover claims for claims submitted to Medicaid and Medicare. I agree, but their allegations aren't limited to just Medicaid and Medicare paying for them. They also allege that they personally financially make payments based on their understanding of the license, right? That's correct, Your Honor. As long as they've reached the threshold of standing, everything after that is the case. Once they've led to an injury, they've met all the requirements. They have, Your Honor, but that goes back to the original standing argument we have, which is their theory that the licenses should and could be declared void fails as a matter of law. As this court discussed with counsel for appellants, there's nothing in Chapter 400 that would allow for the court to declare a license issued by ACCA void ab initio. Because they can't necessarily get to the theory that they're trying to place before the court, that's how it ties into the idea of standing with respect to both an injury in fact and with respect to causation. They haven't alleged in their amended complaint that ACCA wouldn't have issued the licenses that they allege were obtained by the admissions had the correct information been obtained. And so for all of those reasons and the myriad of reasons that are raised in our brief, any one of which would be sufficient for this court to affirm, Mr. Boker respectfully asks that this court affirm the district court's decision dismissing the amended complaint. Is there any allegation that the named plaintiffs made payments out of pocket, paid the nursing home fees out of pocket? Your Honor, I believe around maybe about paragraph 58 of the amended complaint, there's a broad allegation that in general the appellants or the named plaintiffs, either they made payments or their friends and family members made payments on their behalf. So that is contained in the amended complaint. If the court has no further questions, I will cede the rest of my time to the court. Thank you very much. Thank you. Ms. Perry, you have three minutes. Well, yes, a lot was raised about the standing issue. We still submit that we believe we've pled enough in the amended complaint. And that the first amended complaint was done in order to bring the materials in compliance with the federal pleading rules. So that was kind of really our first thing in federal court. We did seek a second amended complaint to have more information to provide to the court in compliance with federal rules. And that was denied us to do that on the grounds it would have been futile, but . . . The way the rules work is that for nondispositive orders, there's a requirement that there be an appeal taken from that to the district court. And that has to be done in a timely manner. And here, you would agree with me that it wasn't done within the 14-day requirement, right? It was done after that. But the first amended complaint, I believe, would have had sufficient information in it, sufficient allegations to carry it on. I believe the people working on the complaint at that time were trying to address some things that had been raised by the defendants. And again . . . The operative complaint, though, I think, does have the problem the district court identified with regard to the RICO counts, which are that there was not the who, what, where, why, when with regard to the wire fraud and the alleged wire fraud and the alleged mail fraud. And I think that's a problem. I think that's a problem that was properly identified by the magistrate judge and the district court. It could be an issue. However, I think that they . . . I believe that they made as much of a who, what, where, when as could be made at that particular time. It's difficult when you're going against a nursing home to have it all. We did allege that there was an enterprise going where nursing home licenses were obtained by making misrepresentations as to management companies and individuals involved in the nursing home chain that had had significant problems in the past in nursing home chains. They kind of go . . . They solve problems. They change the names. They file things with the relevant state agencies with Medicare and with Medicaid. And this information we contended is not accurate. It was knowingly not accurate. And I think that would set up mail fraud and wire fraud sufficient to show, at least for purposes of these motions, to dismiss. Again, I kind of get the sense sometimes this was almost treated by the defense counsel. No disrespect to them. I do admire their abilities in court. But I think it was treated more like a summary judgment kind of situation, which you normally would see after you have the chance to engage in discovery and flesh out the issues. Thank you, Ms. Perry. You have exceeded your time. Thank you. Thank you both. And I guess we have your case under advise.